# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**EVETTA HOLMES,**

        **Plaintiff,**

**v.**                                                                                     **Case No:  6:16-cv-737-Orl-28GJK**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

## REPORT AND RECOMMENDATION

Evetta Holmes (the "Claimant") appeals to the District Court a final decision of the Commissioner of Social Security (the "Commissioner") denying her application of Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Doc. No. 1. Claimant argues that the Administrative Law Judge (the "ALJ") erred by: 1) failing to address Claimant's functional limitations from Morgellons Disease at steps four and five of the Sequential Evaluation Process; and 2) not considering her indigence and homelessness in finding that her medical problems are well-controlled and are not work preclusive based on Claimant's lack of consistent treatment.[1] Doc. No. 15 at 10-13. Claimant requests that the Commissioner's decision be reversed for an award of benefits or, in the alternative, be remanded for further proceedings. Doc. No. 1 at 2. For the reasons set forth below, it is **RECOMMENDED** that the Commissioner's final decision be **AFFIRMED**.

---

[1] Morgellons Disease is defined as "an uncommon, unexplained skin disorder characterized by sores, crawling sensations on and under the skin, and fiber-like filaments emerging from the sores." Doc. No. 15 at 11 (citing the Mayo Clinic, http://www.mayoclinic.org/morgellons-disease/art-20044996)

I.     **FACTUAL BACKGROUND**

On April 10, 2012, Claimant applied for DIB and SSI. Doc. No. 15 at 1. Claimant alleges a disability onset date of May 2, 2011. R. 253. On August 24, 2012, Claimant's applications were initially denied. R. 163; 169. On September 4, 2012, Claimant filed a request for reconsideration. R. 178. On October 17, 2012, Claimant's applications were denied upon reconsideration. R. 180; 186. On December 4, 2012, Claimant filed a request for hearing. R. 192.

On July 3, 2014, a hearing was held before the ALJ. R. 80-104. On August 22, 2014, the ALJ issued an unfavorable decision. R.61-79. On October 10, 2014, Claimant filed a request for review of the ALJ's unfavorable decision. R. 50-60. On December 4, 2015, the Appeals Council denied further review. Doc. No. 15 at 1; R. 5. On April 5, 2016, the Appeals Council granted an extension of time for Claimant to file her appeal in this Court. R. 1-2. On April 29, 2016, Claimant filed this appeal. Doc. No. 1.

Claimant states that the ALJ committed two errors. First, Claimant argues that the ALJ erred by not including functional limitations from Morgellons Disease in the RFC. Doc. No. 15 at 10-13. In support of her argument, Claimant provides a summary of Ms. Walker's opinion, which notes that Claimant's attention and concentration were severely impaired. Doc. No. 15 at 12; R. 600. Second, Claimant argues that the ALJ erred in not considering her indigence and homelessness in finding that her medical problems are well-controlled and are not work preclusive based on Claimant's lack of consistent treatment. Doc. No. 15 at 13; R. 72. In response, the Commissioner makes three arguments. First, the Commissioner contends that Claimant merely provided diagnoses but not any functional limitations and thus failed to meet her burden of proof to show how her Morgellons Disease led to work-related limitations. Doc. No. 15 at 15. Second, the Commissioner contends that the ALJ properly gave no weight to Ms. Walker's opinion because

she was an unacceptable medical source and because "the GAF score, indicating serious symptoms conflicts with the record as a whole, which documents only mild to moderate symptoms." Doc. No. 15 at 15; R. 71. Third, the Commissioner contends that Claimant failed to identify any evidence of her inability to pay, and did not "unduly rely" on Claimant's treatment history. Doc. No. 15 at 17.

## II. THE SEQUENTIAL EVALUATION PROCESS AND STANDARD OF REVIEW

### A. The Sequential Evaluation Process

The Social Security regulations delineate a five-step sequential evaluation process for determining whether a claimant is disabled. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999) (citing 20 C.F.R. § 404.1520). The ALJ must determine: 1) whether the claimant has engaged in substantial gainful activity; 2) whether the claimant has a severe impairment; 3) whether the severe impairment meets or equals the severity of one of the listed impairments; 4) whether the claimant has the residual functional capacity ("RFC") to perform his or her past relevant work; and 5) whether (considering the claimant's RFC, age, education, and work experience) the claimant could perform other work within the national economy. Id.

"Once a case advances beyond step two, the ALJ must consider all impairments, severe or not, […] in assessing the RFC." Gray v. Comm'r of Soc. Sec., 550 Fed. Appx. 850, 853 (11th Cir. 2013).[2] However, an ALJ's finding of a severe impairment does not mean that a claimant suffers from specific functional limitations that limit his or her work activities. See Moore v. Barnhart, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) (explaining that the mere existence of an impairment does not reveal the extent to which that Claimant's ability to perform work-related functions).

---

[2] In the Eleventh Circuit, unpublished decisions are not binding, but are persuasive authority. See 11th Cir. R. 36-2.

**B. Standard of Review**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401 (1971)). Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Foote, 67 F.3d at 1560. The District Court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner].'" See Phillips v. Barnhart, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983)).

**III. THE MEDICAL OPINIONS AND THE ALJ'S DECISION**

On August 15, 2012, Claimant participated in a consultative psychological evaluation with Dr. Anne-Marie Nicholas. Doc. No. 15 at 5; R. 70. Claimant reported "tactile hallucinations related to feeling as if something was crawling on her skin and in her hair." R. 598. Claimant also reported "nightmares, flashbacks, avoidance, and hypervigilance." Id. Claimant "cut her hair as a result of feeling as if something was crawling in her hair." Id. Clamant had hallucinations on a daily basis. Id. Claimant's affect appeared anxious. Id. Claimant stated that she was homeless. R. 599. Dr.

4

Nicholas diagnosed Claimant with Anxiety Disorder Not Otherwise Specified. R. 600. In providing a summary of her observations, Dr. Nicholas states:

> Ms. Holmes is a single, African-American female, 45 years of age who appears to be suffering from Anxiety Disorder, NOS. <u>Further medical evaluation is warranted to ascertain the origin of tactile hallucinations</u>. [Claimant's] overall presentation appeared valid and consistent with the reported conditions. <u>The mental health symptoms based on [Claimant's] report and clinical observations appear to be moderately impacting activities of daily living, vocational performance, and interpersonal interactions</u>…

Id. (emphasis added). Thus, Dr. Nicholas acknowledged Claimant's tactile hallucinations and opined Claimant's mental health symptoms appear to moderately impair vocational performance and interpersonal interactions.

On December 10, 2013, Claimant participated in a biophysical assessment with Deborah Walker, B.S. R. 638-643. Claimant stated that she felt something crawling on her "all of the time," and that she had tactile hallucinations. R. 638; 640. Claimant's mood was anxious. R. 640. Claimant's concentration was severely impaired. Id. In providing a summary of her observations, Ms. Walker states:

> [Claimant] needs help with anger and depression. She has anger outbursts and stays away from people rather than deal with it. She realized this is not normal behavior and came for help. <u>She has had itching all over her body. She feels like she has mites of some kind. She starches constantly.</u>

R. 642 (emphasis added). Ms. Walker also states that Claimant "has uncontrollable itching and scratching [and] anger outbursts…" Id.

At step two, the ALJ found Claimant to have the following severe impairments: Morgellons Disease, anxiety disorder, cervical degenerative disc disease, and lumbar degenerative disc disease. R. 66. At step four, the ALJ weighed a number of medical opinions. R. 70-72. The ALJ gave significant weight to Dr. Nicholas' opinion "because the diagnosis…[is] consistent with the

5

treatment records, which show only mild to moderate mental health symptoms." R. 70. The ALJ gave no weight to Ms. Walker's opinion because "the GAF score, indicating serious symptoms conflicts with the records as a whole, which documents only mild to moderate symptoms." R. 71. The ALJ ultimately found that Claimant had an RFC to perform a limited range of light work:

> After careful consideration of the entire record, I find that [Claimant] has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). She can occasionally perform the postural maneuvers (climb, balance, stoop, kneel, crouch, and crawl). She may not have concentrated exposure to vibrations. <u>She is limited to simple tasks with little variation which take a short period of time to learn (up to and including thirty days). She is able to deal adequately with supervisors but is limited to occasional co-worker contact and no general public contact.</u> She is able to deal with the changes in a routine work setting.

R. 68 (emphasis added). At the end of his opinion, the ALJ again addressed Claimant's Morgellons Disease:

> Regarding [Claimant's] allegations of panic attacks and <u>feeling things crawling on her, she did not consistently report these problems when she sought medical treatment.</u> For example, [Claimant] consulted Dr. Balaguer on December 3, 2013 and she did not report having panic attacks or having something crawling on her. When [Claimant] met with Ms. Walker 10 days later, [Claimant] reported being diagnosed with anxiety in the past and having something crawling on her. <u>There is no evidence that [Claimant] had any follow up mental health treatment after her assessment with Ms. Walker. [Claimant's] lack of consistent mental health treatment suggests that her symptoms are well controlled and supports the finding that her mental health problems are not work preclusive.</u>

R. 72 (emphasis added). Thus, at the end of his decision, the ALJ also noted Claimant's lack of follow-up treatment for her mental health suggests her symptoms were well controlled and did not preclude employment.

6

## IV. ANALYSIS

### A. Functional Limitations from Morgellons Disease

Claimant does not directly challenge the weight given by the ALJ or the reasons therefor as to any medical opinion. Doc. No. 15 at 10-13. Instead, Claimant argues that the ALJ failed to account for functional limitations resulting from the severe impairment of Morgellons Disease. Id. More specifically, Claimant provides a summary of Ms. Walker's opinion, which states that Claimant has a severe impairment in concentration and attention. Doc. No. 15 at 13. Because there is no other medical evidence in the record stating that Claimant suffers from a severe impairment in concentration and attention, the Claimant's argument rests squarely upon Ms. Walker's opinion. In response, the Commissioner argues that Ms. Walker's opinion was properly given no weight because she was an unacceptable medical source and because "the GAF score, indicating serious symptoms conflicts with the record as a whole, which documents only mild to moderate symptoms." Doc. No. 15 at 15; R. 71. The undersigned agrees and finds no error in the ALJ's decision to give Ms. Walker's opinion no weight for the reasons stated by the ALJ. First, Ms. Walker does appear to be an unacceptable medical source. At the end of her opinion, Ms. Walker indicates she has a Bachelor of Science degree. R. 643. Ms. Walker's credentials do not make her an acceptable medical source under the Social Security regulations. See 20 C.F.R. § 404.1513 (describing acceptable medical sources as licensed physicians, psychologists, optometrists, podiatrists, and qualified speech language pathologists). See also, Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1160 (11th Cir. 2004) (holding that because a chiropractor was not an acceptable medical source his opinion cannot establish the existence of an impairment). Second, Claimant does not challenge the weight given to any medical opinions and, therefore, has waived that issue. Sanchez v. Comm'r of Soc. Sec., 507 Fed. Appx. 855, 856 n.1 (11th Cir. 2013) (finding

7

that Claimant has "effectively abandoned" any challenge to the weight given to the medical opinions by the ALJ because he failed to explicitly state such challenge).

In regard to Claimant's bald assertion that ALJ failed to account for limitations stemming from Morgellons Disease, the Court notes that whenever the medical evidence indicates the existence of a mental impairment, the ALJ has a duty to order a psychological evaluation. McCall v. Bowen, 846 F.2d 1317, 1320 (11th Cir. 1988). The ALJ fulfilled his duty and ordered a consultative evaluation by Dr. Nicholas. R. 70. The ALJ stated that he considered all of Claimant's symptoms. R. 68. When an ALJ states that he considered all of a claimant's functional limitations, the Court will accept that the ALJ made such a consideration. See Urquhart v. Colvin, No. 2:13–cv–724–FtM–CM, 2015 WL 263439, at *6 (M.D. Fla. Jan.15, 2015) (it is sufficient for ALJ to state that he or she "considered and determined all of Plaintiff's impairments—both severe and non-severe—in assessing [claimant's] RFC").

As stated above, Claimant does not challenge the weight given to any medical opinion. Instead, Claimant relies on Ms. Walker's opinion which, for the reasons stated above, the ALJ did not err in giving no weight. Dr. Nicholas' opinion addressed Claimant's mental impairments and found moderate limitations in vocational performance and interpersonal interactions. R. 600. That opinion was given significant weight by the ALJ. R. 70.[3] The ALJ then limited Claimant's RFC to "simple tasks with little variation…" R. 68. The Court finds Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180-81 (11th Cir. 2011) instructive. In Winschel, the Eleventh Circuit held that where a claimant has a mental limitation as to concentration, persistence, or pace, such limitation must be accounted for explicitly or implicitly in the RFC. Id. When medical evidence shows that a claimant can perform simple tasks despite his or her mental limitations in

---

[3] In doing so, the ALJ noted that the treatment records largely showed mild to moderate limitations. R. 70.

8

concentration, persistence, and pace, the ALJ can implicitly account for such limitations by limiting the RFC to simple tasks. Id. at 1181. Similarly, in this case, the ALJ accounted for Claimant's moderate limitations in vocational performance and interpersonal interactions by limiting Claimant's RFC to "simple tasks with little variation" and "occasional co-worker contact and no general public contact." R. 68. No party has identified any record evidence, other than the note from Ms. Walker's which has already been addressed, indicating that Claimant's mental limitations are more severe than those found by the ALJ. See Paige v. Colvin, Case No: 3:14-cv-1343-J-JRK, 2016 WL 703847, at *6 (M.D. Fla. Feb. 23, 2016) (finding claimant had "not directed the court to other objective medical findings that support limitations greater than those assessed by the ALJ's RFC. Accordingly, the ALJ's Decision on this issue is due to be affirmed"). Thus, the Court finds that the ALJ sufficiently considered Claimant's functional limitations from Morgellons Disease.

### B. Claimant's Inconsistent Medical Treatment

The ALJ stated that Claimant's lack of consistent mental health treatment suggested Claimant's mental health symptoms were controlled and not work preclusive. R. 72. The Eleventh Circuit has held that "refusal to follow prescribed medical treatment without good reason will preclude a finding of disability," but "poverty excuses noncompliance." Ellison v. Barnhart, 355 F.3d 1272, 1275 (11th Cir. 2003) (citing Dawkins v. Bowen, 848 F.2d 1211, 1213 (11th Cir. 1988)). In Ellison, the Eleventh Circuit held:

> When an ALJ relies on noncompliance as the sole ground for the denial of disability benefits, and the record contains evidence showing that the claimant is unable to comply with prescribed treatment, the ALJ is required to determine whether the claimant was able to afford the prescribed treatment.

9

Ellison, 355 F.3d at 1275 (citing Dawkins v. Bowen, 848 F.2d 1211, 1214 (11th Cir. 1988)) (emphasis added). The Eleventh Circuit recognized that in Dawkins, the ALJ erred in failing to consider a claimant's ability to afford medical treatment and relying "primarily if not exclusively" on evidence pertaining to the claimant's noncompliance. Id. The Ellison Court, however, found that the ALJ did not err in discrediting a claimant's credibility because the ALJ's determination was not "significantly based on a finding of noncompliance". Id. (emphasis added).[4] Thus, if the ALJ's decision is not significantly based on a claimant's non-compliance with medical treatment, the ALJ need not consider a claimant's ability to afford such treatment. Id.

Here, the ALJ's determination was not primarily based on Claimant's non-compliance. First, the ALJ explicitly states that Claimant's lack of consistent mental health treatment "suggests that her symptoms are well controlled and supports the finding that her mental health problems are not work preclusive." R. 72. The Court interprets the ALJ's statement as indicating that such an observation suggested that his RFC finding was correct, but was not a significant factor in his analysis. Second, as stated above, the ALJ thoroughly reviewed the medical records and found that the medical evidence showed Claimant's mental limitations are not work preclusive. R.72 ("no physician opined that [Claimant] is disabled, and no physician imposed work preclusive limitations upon [Claimant]") (emphasis added). After reviewing the ALJ's decision, the undersigned finds that the ALJ's finding is based primarily on the medical evidence showing that Claimant's mental limitations are not work preclusive. Thus, the Court finds that Claimant's lack of consistent

---

[4] Social Security Ruling 96-7p, 1996 WL 374186, at *7 (July 2, 1996) ("The adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue medical treatment without first considering any explanations that the individual may provide, or other information in the case records, that may explain infrequent or irregular medical visits or failure to seek medical treatment").

treatment was merely a supporting factor in the ALJ's analysis. Accordingly, the Court finds no error in the ALJ's consideration of Claimant's lack of consistent medical treatment.[5]

## V. CONCLUSION

For the reasons stated above, it is **RECOMMENDED** that the Court:

1. **AFFIRM** the Commissioner's final decision; and

2. Direct the Clerk to enter judgment in favor of the Commissioner and close the case.

### NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. See 11th Cir. R. 3-1.

Recommended in Orlando, Florida on January 26, 2017.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy

---

[5] Claimant argues that the ALJ's reliance on the VE's testimony is not based on substantial evidence because the hypothetical question posed to the VE did not include functional limitations from Claimant's Morgellons Disease. Doc. No. 15 at 13. Because the undersigned finds no error in the ALJ's RFC finding (and Claimant does not argue that the hypothetical posed to the VE failed to match the RFC), the Court also finds no error in the hypothetical posed to the VE.

11